UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>United States of America</u>,
    Government

    v.                                      Criminal No. 06-cr-071-1-2-SM
                                             Opinion No. 2010 DNH 065
<u>Edward L. Brown and</u>
<u>Elaine A. Brown</u>,
    Defendants

<u>In Re:  Claim of Bernhard Bastian, Jr.</u>

**O R D E R**

The issues presented in this ancillary forfeiture matter are a bit convoluted, both legally and factually.  The government seeks to forfeit a number of firearms as substitute property allegedly belonging to the defendant, Edward L. Brown.  Bernhard Bastian, Jr., contests the government's forfeiture claims on grounds that he holds legal title to the property at issue, and that he acquired title before the government sought to forfeit the property.  Both parties have moved for summary judgment.

**Background**

Before he was indicted, Edward L. Brown, a defendant in the underlying criminal tax-fraud and money-laundering case, owned a number of firearms.  As a condition of his release on bail, Brown voluntarily surrendered those firearms and agreed both that the firearms would be held by Riley's Sport Shop, Inc., pending

resolution of the charges, and that he would pay all storage charges incurred.  Brown was subsequently convicted of several felonies, all unrelated to the surrendered firearms.  (So, the firearms at issue here do not constitute contraband and they are not subject to forfeiture, except as substitute property.)  Brown was sentenced to over five years in prison (and later sentenced on different charges, also unrelated to the surrendered firearms, to over thirty years in prison).  During the tax-fraud trial, however, Brown absconded, mounting a stand-off at his home in Plainfield, New Hampshire.

On April 21, 2007, while a fugitive, Brown signed and delivered a letter to the claimant, Bernhard Bastian, which stated, in relevant part:

> . . . in the event of my death or incarceration or in any circumstances which prohibit my repossessing my property (guns, ammunition, firearms or any other items held at Riley's Sport Shop, Inc., at 1575 Hooksett Road, Hooksett, New Hampshire) all that property in its entirety is to be given to Bernhard Bastian, Weare, New Hampshire.

Deposition of Bastian, Ex. 2, document 309, p. 16.

Brown was taken into custody by the United States Marshal in October of 2007, whereupon Bastian sought to acquire the stored firearms.  But Riley's understandably declined to release the property in the absence of a court order.  The issue was brought

to the Magistrate Judge's attention, and, on July 21, 2008, the Magistrate Judge issued an order (document no. 276) with respect to disposition of those firearms, stating:

> The weapons surrendered by defendant, Edward Lewis Brown, as a bail condition are no longer held as a condition of bail (defendant violated bail and has been convicted and sentenced). They may be transferred by defendant to anyone who may legally possess them subject to any liens or charges by Riley's Sport Shop, Inc., for their storage charges owed by defendant.

That order was docketed in this case and was served on both the prosecutor, Assistant United States Attorney ("AUSA") William E. Morse, and upon AUSA Robert J. Rabuck, as well as Riley's Sport Shop. AUSA Rabuck generally represents the United States in this district in matters involving asset forfeiture, and that was his role here. Although on actual notice of the Magistrate Judge's order, the government did not file a motion to reconsider, did not file an objection, and did not appeal the order to a district judge.

Relying upon that order (though seemingly misconstruing it), Riley's transferred the firearms to Mrs. Bonnie Bastian (wife of the claimant) on July 26, 2008. The record suggests that Riley's construed the Magistrate Judge's order as authorizing it, acting through its owner, Mr. Demicco, "to transfer the guns to anyone [it] pleased." Demicco recites in a supporting affidavit:

> Although I considered the stated wishes of Mr. Brown as set forth in his letter, my decision to transfer the guns and related property to Bonnie Bastian was based upon a number of considerations other than Mr. Brown's letter. It was my understanding that the decision was mine and mine alone.

The record, as developed by the parties, suggests that Riley's transferred the firearms at issue to Bonnie Bastian, rather than the claimant, Bernhard, because Bonnie held a valid New Hampshire driver's license while Bernhard did not, and that fact made a difference to Demicco. Bonnie Bastian then (seemingly) transferred the firearms to Bernhard, who took possession, and claims legal title to the property.

Nearly five months later, on December 9, 2008, the government filed a motion to amend the previously entered final order of forfeiture in this case to include forfeiture of the firearms at issue, as substitute property (document no. 292). The government did not disclose in its motion that the described substitute property consisted of the very firearms that Brown surrendered as a condition of his bail, that were previously held by Riley's, that had been ordered transferred by the Magistrate Judge in July without government objection, and that had already been delivered to Bastian.

Bastian's opposition to the government's forfeiture claim is grounded, essentially, on his assertion of an interest in the

4

property superior to that of Brown when the substitute property was subjected to forfeiture.  21 U.S.C. §§ 853(c) and (n).  The government, on the other hand, contends that because Brown became a convicted felon upon return of the jury's guilty verdicts on January 18, 2007, he could not then, or at any time thereafter, actually or constructively possess the firearms stored at Riley's (i.e., he could not exercise "dominion or control" over them).  Therefore, the government concludes, Brown also could no longer divest himself of legal title to the firearms, because the minimal act of transferring title, even to property in the government's exclusive possession, necessarily requires the exercise of some "dominion or control," which, in turn, would constitute the crime of unlawful "possession," prohibited by 18 U.S.C. § 922(g).  The government argues that the sole source of ownership rights that Bastian can claim is Brown's April 21, 2007, letter, and, to the extent that letter purports to transfer title, it is void.

## Discussion

First, the Magistrate Judge's order is controlling, and it is much too late for the government to challenge that order now. Whether the Magistrate Judge's order is considered dispositive or non-dispositive, the government had 10 days after being served with a copy to object to, or appeal it.  Fed. R. Civ. P. 72 (2007).  Having failed to object to or appeal that order, the

government cannot now appeal it.  <u>Sunview Condo. Ass'n v. Flexel Int'l</u>, 116 F.3d 962 (1st Cir. 1997).  Moreover, the disposition of property held as a condition of bail is a matter falling well within the court's jurisdiction, and no due process rights were violated by the order's provisions (the government had actual notice and a full opportunity to be heard).  No litigant, including the government, is entitled to sleep on his or her rights, seeking to enforce them only after they have been voluntarily forfeited.  <u>See generally</u> <u>United Student Aid Funds, Inc. v. Espinosa</u>, ___ U.S. ___, 2010 WL 1027825 (March 23, 2010).

Second, even if the government could now challenge the Magistrate Judge's order, the order was valid.  The government relies on several decisions from other circuits and districts that seem to adopt the proposition that a convicted felon cannot lawfully divest himself of mere legal title to firearms that he can no longer lawfully possess, without thereby "constructively possessing" those firearms.[1]  Those decisions stretch the concept of "constructive possession," as the term is used in the criminal statute prohibiting possession by felons (18 U.S.C. § 922(g)), much too far, in my view, essentially equating criminal

---

[1] <u>See</u>, <u>e.g.</u>, <u>United States v. Abumayyaleh</u>, 530 F.3d 641 (8th Cir. 2008); <u>United States v. Felici</u>, 208 F.3d 667 (8th Cir. 2000); <u>United States v. Soto-Diarte</u>, No. 06-20142-03-JWL, 2009 WL 1639718 (D. Kan. June 11, 2009); <u>United States v. Oleson</u>, No. 01-CR-21-LRR, 2008 WL 2945458 (N.D. Iowa July 24, 2008); <u>United States v. Craig</u>, 896 F. Supp. 85 (N.D.N.Y. 1995).

constructive possession with even the most minimal exercise of an indicia of ownership — transferring legal title (and, ironically, thereby divesting title to personal property that the owner may not lawfully possess).

No precedent cited by the government holds that mere continuing ownership of firearms following a felony conviction, without more, amounts to constructive possession. And, expectedly, there do not appear to be any reported § 922(g) prosecutions based on such a theory (it is hard to imagine one succeeding). The government certainly does not take that position here, of course, because its forfeiture claim presupposes Brown's continuing ownership interest in the firearms following his felony conviction and through the date the preliminary forfeiture order was entered. It seems inconsistent to contend on the one hand that continued ownership of firearms does not amount to constructive possession, but, on the other hand, terminating one's ownership interest does.

The government's main point here, however, is this: A person who lawfully owns, say, a valuable gun collection just before a jury returns an unrelated felony guilty verdict (<u>e.g.</u>, for mail fraud) can, thereafter, no longer sell, give away, or transfer legal title to that collection. But, strictly speaking, the decisions relied upon by the government are not so clear —

they do generally accept that a defendant in such a predicament cannot <u>unilaterally</u> direct or "dictate" the specific disposition of owned firearms, but they do not, for example, hold that title to the firearms cannot be conveyed, or that a <u>court</u> cannot order an appropriate disposition of such firearms, for the benefit of the defendant.

The Third Circuit's unpublished and brief decision in <u>United States v. Roberts</u>, 322 Fed. App'x 175, 176 (3rd Cir. 2009), relied upon by the government, supports the notion that courts may exercise equitable power to dispose of firearms owned by felons, but it takes an additional, and questionable, step.  In <u>Roberts</u>, the Third Circuit affirmed a district court's order permitting the government to <u>destroy</u> firearms owned by a convicted felon.  Roberts is not controlling in this circuit, and its conclusion with respect to disposition of the firearms is unpersuasive on several grounds.  For example, the ordered destruction would seem to raise serious Takings Clause issues.  Firearms subject to neither lawful forfeiture nor confiscation as contraband (as in this case) remain valuable tangible personal property belonging to the convicted felon.  I doubt the government's right to simply confiscate and destroy such valuable property without first affording due process and payment of just compensation, even if it is accepted that the felon-owner cannot unilaterally transfer his ownership rights following a felony

conviction. In Cooper v. City of Greenwood, 904 F.2d 302 (5th Cir. 1990), for example, the Fifth Circuit recognized that even one convicted of illegally possessing firearms does not lose his or her property interest in the firearms by virtue of the conviction alone. That property interest cannot be simply taken by the government without affording the property owner due process of law.

In any event, in this case it is plain that Brown did not unilaterally dispose of or "dictate" disposition of the firearms at issue. Brown's letter of April 21 purported to make a gift of the firearms (and other property) to Bastian, in "any circumstances which prohibit[ed]" his repossessing them.[2] Brown delivered his letter to Bastian, which evidenced his intent to complete the gift, subject to the specified conditions arising.

Later, after Brown was taken into custody, Bastian sought delivery of the firearms from Riley's. Riley's understandably took the view that, absent a court order allowing their release, custody of the firearms would remain with it, and so the Magistrate Judge issued the order described above. Given that order, and Brown's letter expressing his wishes, and that

---

[2] Brown apparently did not recognize that those circumstances already existed, by virtue of his tax-fraud conviction. He seems to have contemplated just his own death or incarceration as triggering events.

Bastian's wife had a New Hampshire driver's license and was otherwise lawfully entitled to possess the firearms, Riley's transferred the firearms to her, after collecting its storage fees in kind.  The record is not fully developed with respect to the actual terms of the transfer to Mrs. Bastian, nor with respect to her transfer to Mr. Bastian, but the government does not challenge any aspect of those transactions.  Its claim is deliberately focused:  Brown could not legally transfer title, and (presumably) the Magistrate Judge could not order it, so Brown still holds title, and Bastian had no legal claim to ownership of the firearms superior to Brown's when the government sought forfeiture.

    Properly construed, in context, the Magistrate Judge's order of July 21, effected the transfer of ownership of Brown's firearms.  The firearms were safely locked away at Riley's in government custody.  There was no possibility that Brown could, in any realistic possessory sense, exercise dominion or control over those firearms.  And, even assuming that Brown's April 21 letter (and occurrence of the anticipated conditions), did not, alone, effect transfer of title, still, it is plain that Riley's would not, and did not, transfer the firearms to Mrs. Bastian until after the court order issued.  The Magistrate Judge's order, then, effected the transfer and validated the disposition of Brown's ownership interest, for Brown's benefit.

While, literally, the Magistrate Judge's order directed <u>Brown</u> to transfer the firearms, read in context, the order can only refer to the transfer of legal title from Brown to Bastian and transfer of possession from Riley's to Bastian (or whoever Brown designated, so long as they could lawfully possess them). Suggesting that Brown could not lawfully transfer title acting unilaterally is, of course, a very different thing from suggesting that the court could not order disposition.  And, even accepting, for argument's sake, that Brown could not unilaterally direct or "dictate" disposition of the firearms, that fact presented no bar to the court's directing disposition in a manner accommodating Brown's wishes — that is, there is no legal principle that suggests that while a court can order the disposition of firearms under these circumstances, a court cannot order transfer of title or possession to a particular person if the felon-owner actually prefers or approves of that disposition.

As a practical matter, in the end, that is precisely what occurred.  Brown preferred to, and chose to, give his property to Bastian; the Magistrate Judge ordered ownership and possession transferred to anyone who could lawfully possess the firearms, as Brown desired; Riley's released the property to Mrs. Bastian on the authority of the court's order (though Riley's misunderstood its import); and Bernhard Bastian took possession and legal title in accordance with Brown's gift (donative intent plus delivery)

11

of the property.  On this record, then, Bastian's claim to the property is plainly superior to the government's, because, by December of 2008, when the government sought forfeiture of Brown's interest in the firearms, he no longer had an interest. The firearms belonged to Bastian.

Someone has to be capable of legally transferring ownership of the property if the owner cannot, as the government contends. I reject the idea that firearms lawfully owned must, following the owner's unrelated felony conviction, sit wherever they may be, unalienable and wasting, not subject to forfeiture, not subject to confiscation as contraband, and not subject to disposition by the owner, or by anyone else, or by the court for the owner's benefit.  I also reject the notion that such property is subject to government confiscation and destruction in the absence of due process or payment of just compensation.

Senior Judge Longstaff's pragmatic solution to this problem is the appropriate one:  the court, exercising equitable powers, may order the transfer of title to firearms lawfully owned by a person later convicted of a felony (which are not subject to forfeiture or confiscation as contraband) for the felon-owner's benefit.  See United States v. Approximately 627 Firearms, 589 F. Supp. 2d 1129, 1140 (S.D. Iowa 2008) (quoting Cooper, 904 F.2d at 306 ("We see no reason that a court . . . could not order a

sale for the account of a claimant who . . . legally could not possess firearms, were forfeiture to be denied for any reason.")); <u>United States v. Seifuddin</u>, 820 F.2d 1074 (9th Cir. 1987) (convicted felons retain a non-possessory interest in seized firearms). That approach precludes convicted felons from constructively possessing firearms (to the extent that term can be teased to include transferring mere legal title); it precludes a convicted felon from unilaterally dictating or directing disposition, as some courts have found objectionable; it avoids serious constitutional issues arising under the Takings Clause; and it fully protects the felon-owner's legitimate property interests in a manner consistent with applicable criminal law.

## Conclusion

Claimant's motion for summary judgment (document no. 311) is granted. The government's motion for summary judgment (document no. 309) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

April 9, 2010

```
cc:   David S. Kessler, Esq.
      Craig S. Donais, Esq.
      Robert J. Rabuck, Esq.
      William E. Morse, Esq.
      Seth R. Aframe, Esq.
      Bjorn R. Lange, Esq.
      Glenn A. Perlow, Esq.
      U.S. Probation
      U.S. Marshal
```